# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

DIANE M.,

       Plaintiff,

       v.

ANDREW M. SAUL,
Commissioner of Social Security,

       Defendant.

Case No. ED CV 19-00117-DFM

MEMORANDUM OPINION
AND ORDER

Diane M. ("Plaintiff") appeals from the Social Security Commissioner's final decision rejecting her application for Social Security disability insurance benefits ("DIB").[1] For the reasons set forth below, the Commissioner's decision is affirmed.

## I.
## BACKGROUND

Plaintiff filed an application for DIB and alleged disability beginning on February 18, 2015. See Administrative Record ("AR") 145. After a hearing, an

---

[1] The Court partially redacts Plaintiff's name in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

Administrative Law Judge ("ALJ") issued an unfavorable decision on January 23, 2018. <u>See</u> AR 13-22. The ALJ concluded that Plaintiff had the severe impairments of degenerative disc disease and obesity. <u>See</u> AR 15. The ALJ also concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. <u>See</u> AR 17. The ALJ then determined that Plaintiff's residual functional capacity ("RFC") limited her to light work with certain additional limitations. <u>See</u> AR 18. The ALJ concluded that Plaintiff was not disabled, because she could perform her past work as a clerk, cable assembler, and repair clerk, assembler, as generally performed. <u>See</u> AR 21-22. This action followed. <u>See</u> Dkt. 1.

## II.
## DISCUSSION

The parties dispute whether the ALJ: (1) properly considered Plaintiff's subjective symptom testimony, (2) correctly found that Plaintiff's knee osteoarthritis was non-severe, (3) "fully developed the record," and (4) "provided a complete" RFC. <u>See</u> Dkt. 17, Joint Submission ("JS") at 3.

## A.    <u>Plaintiff's Symptom Testimony</u>

The Court engages in a two-step analysis to review the ALJ's evaluation of Plaintiff's symptom testimony. <u>See</u> <u>Trevizo v. Berryhill</u>, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. <u>See</u> <u>id.</u> If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of symptoms only by offering specific, clear and convincing reasons for doing so. <u>See</u> <u>id.</u> "[O]nce the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the

alleged severity of pain." Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc).

At the 2017 hearing, Plaintiff testified that she was 5'4" and weighed 215 pounds. See AR 30. She last worked in May 2014 as a certified nursing assistant and was laid off after failing a physical fitness test. See AR 31. She had looked for work since that time as a nurse's aide but could not "really do [the job] anymore." AR 31. She could not lift more than 15 pounds or "move around that much" because of hip, knee, back, and neck pain. AR 34. She could not exercise "per se." AR 35. She drove "very little," perhaps three times in the last year, due to her eyesight. AR 35. At the time of the hearing, however, she had almost 20/20 vision after cataract surgery. See AR 36. She could walk only a block before being in a "tremendous amount of pain," perhaps a block and a half if she was "pushing it." AR 41. She could not sit for more than half an hour or stand for more than half an hour, forty-five minutes if she was "pushing it." AR 40, 42.

The ALJ found that Plaintiff's testimony about the intensity, persistence, and limiting effects of the symptoms were inconsistent with the evidence of record. See AR 19. Specifically, the ALJ found that Plaintiff's claims conflicted with the medical evidence and her reported daily activities. See id. The ALJ did not find any malingering. Therefore, the ALJ was required to provide specific, clear and convincing reasons for rejection of Plaintiff's testimony. See Trevizo, 871 F.3d at 678.

Plaintiff does not contest that the objective medical evidence was not consistent with her subjective symptom testimony. See JS at 3-12. A physical exam in March 2015 reflected full range of motion of the neck, stable gait, and normal extremity strength. AR 20 (citing AR 437-41). Plaintiff received SI joint and lumbar injections, which improved her pain. AR 20 (citing AR 448, 456, 464, 474, 567, 578-79). January 2016 physical exams reflected stable back

pain and normal gait and motor strength. AR 20 (citing AR 710, 876, 960-61). After reporting knee pain in 2016, she lost weight on the doctor's recommendation and her symptoms improved. AR 20-21 (citing AR 999-1000, 1126, 1300). At various points in 2015 and 2016, Plaintiff reported exercising every day at moderate to strenuous levels. AR 578 (in August 2015, "Plaintiff exercises 140 minutes per week at a moderate to strenuous level"), 592 (in August 2015, noting that Plaintiff exercises for 20 minutes a day at a moderate to strenuous level, like taking "a brisk walk"),[2] 1085 (same in May 2016), 1271 (increased to 210 minutes per week at moderate to strenuous level in August 2016). In short, nothing in the medical record suggests that Plaintiff was at any time incapable of exercising or of walking more than a block and a half without tremendous pain.

Although an ALJ may consider a lack of medical evidence, it "cannot form the sole basis for discounting pain testimony." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). Here, the ALJ also rejected Plaintiff's subjective symptom testimony because her reported daily activities were inconsistent with her testimony. Plaintiff's allegations at the hearing were extreme: she could not walk for more than a block without being in "tremendous pain" and was incapable of standing or sitting for more than forty-five minutes. Indeed, in her function report, she claimed that she could not stand for "any period of time" or sit for "any length of time" without her pain going "into critical level." AR 176, 178.

But as the ALJ noted, the record reflects daily activities that are inconsistent with these extreme limitations. She admitted at the hearing to being driven to Rhode Island for a two-week vacation in 2017; even with

---

[2] Plaintiff incorrectly argues that the records contain "no explanation of what 'moderate to strenuous level' is." JS at 11.

occasional stretching breaks, she would necessarily have been sitting for much longer than she claimed she could when she was "pushing it." AR 42, 1300. As noted above, in 2015 and 2016 Plaintiff reported exercising every day at moderate to strenuous levels. A January 2016 medical record reflects that she had been walking her two dogs in the afternoon; it is hard to imagine how she could do this without walking more than a block and a half. AR 709; see also AR 210 (stating that she takes her two dogs for short walks if her pain is not "out of control"). "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014). While the Social Security Act "does not require that claimants be utterly incapacitated for benefits," Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989), there was substantial evidence in the record to support the ALJ's finding that Plaintiff's testimony about her limitations did not match her reported daily activities.

A different ALJ may have found Plaintiff more credible, but this Court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). Remand is not warranted on this claim of error.

**B.    Severity of Knee Osteoarthritis**

At step two, the ALJ assesses whether the claimant has a medically severe impairment or combination of impairments that lasted or was expected to last for a continuous period of at least 12 months. See 20 C.F.R. § 404.1520(a)(4)(ii). Severe impairments have more than a minimal effect on an individual's ability to perform basic work activities. See Webb v. Barnhart, 433 F.3d 683, 686-87 (9th Cir. 2005); see also Social Security Regulation No. 96-3(p) (1996). This inquiry is "a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).

The ALJ did not discuss Plaintiff's knee osteoarthritis when discussing

the severity of Plaintiff's other impairments. See AR 15-17. Elsewhere, he noted that Plaintiff began reporting knee pain in "around" April 2016, was diagnosed with osteoarthritis of the left knee, and was encouraged to lose weight, which she did. See AR 20-21 (citing AR 516, 690, 1000).

The Court agrees that the ALJ likely erred in failing to find that Plaintiff's knee osteoarthritis was severe. Plaintiff in fact began complaining of "knee issues" in 2014, see AR 519, and X-rays in August 2015 revealed moderate degenerative joint disease and moderate arthritis in both knees, see AR 588, 1114. Physical examinations in 2016 showed tenderness. See AR 1114, 1174, 1384. She received injections to help with the pain. See AR 1115, 1177. One physician referred her to physical therapy and ordered knee braces. AR 1639. This evidence suggests an impairment that would have more than a minimal effect on Plaintiff's ability to perform basic work activities.

Nonetheless, this error was harmless. Where an ALJ errs in omitting a severe impairment at step two, the error is harmless so long as the ALJ considers all of the claimant's functional limitations at subsequent steps (including those caused by the omitted severe impairment). Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007). The ALJ was aware of Plaintiff's knee complaints and osteoarthritis diagnosis, even if he did not pinpoint the exact date of her first complaints. See AR 20-21. In assessing the RFC, the ALJ gave great weight to the opinions of the two state agency physicians. At the initial level, the physician who signed the report on May 14, 2015, did not have Plaintiff's August 2015 knee X-rays. AR 21. The physician on reconsideration, however, explicitly discussed these records and concluded that Plaintiff was nonetheless capable of light work. See AR 63 ("XR bil knees-no fx is identified, moderate joint disease is present with narrowing of the medial compartment"), 64 ("The light RFC will accommodate for lumbar DDD and knee DJD"). Plaintiff has not provided any physicians' opinions to contradict

the state agency physicians. Thus, regardless of whether the ALJ had classified Plaintiff's knee osteoarthritis or degenerative joint disease as severe, the RFC would have been the same.

## C.  Development of Record

Plaintiff argues that the ALJ "should have sent plaintiff to an orthopedic consultative examination" due to Plaintiff's osteoarthritis and evidence of degenerative changes in her hips. JS at 21. According to Plaintiff, the state agency physicians upon which the ALJ relied did not have a chance to review a 2016 X-ray of her hips or her "ongoing treatment for her knees." Id.

ALJs "may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [them] to make a determination or decision" on a claim. 20 C.F.R. § 404.1519a. The ALJ's duty to further develop the record is triggered "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citation omitted).

A March 2016 hip X-ray showed "advanced right and moderate left hip degenerative changes" but—importantly—"no significant change" from an August 21, 2015 X-ray. See AR 900. The state agency physician on reconsideration discussed this 2015 X-ray, writing, "XR pelvis-mild to mod DJD bil." AR 63. While the more recent X-ray showed that Plaintiff's hip degeneration had continued, the report ultimately concluded that there had been "no significant change" since August 2015. Thus, Plaintiff has not identified an ambiguity or gap in the record here.

As for Plaintiff's knees, the mere fact that Plaintiff continued to receive treatment for her knees does not create an ambiguity in the record. Both the ALJ and the physician on reconsideration were aware of Plaintiff's knee complaints, treatment, osteoarthritis, and imaging results and nonetheless

concluded that Plaintiff was capable of light work. None of the other evidence in the record contradicts this finding, and given the medical evidence discussed herein, substantial evidence supported it. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (noting that claimant bears burden of proving that she is disabled and must present "complete and detailed objective medical reports of her condition from licensed medical professionals").

**D.    "Completeness" of RFC**

Plaintiff argues that the ALJ erred by failing to discuss the evidence regarding Plaintiff's hips and discuss "at any length" her knees, citing Social Security Regulation 96-8p. See JS at 24-25.

SSR 96-8p provides that the "RFC assessment must be based on all of the relevant evidence in the case record, such as: . . . medical signs and laboratory findings . . . [and] . . . effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment," and must include "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

Plaintiff does not argue that her hip impairment was "severe" such that it would have had more than a minimal effect on her ability to perform basic work activities. Thus, the ALJ did not err by failing to discuss her hip impairment specifically. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) ("[I]n interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" (citation omitted)). Furthermore, as explained above, the state agency physician on reconsideration cited Plaintiff's 2015 hip and knee x-rays and nonetheless concluded that Plaintiff was capable of light work. No other physician contradicted this conclusion. The RFC with respect to Plaintiff's knee impairment was supported by substantial evidence, given the state agency

physician opinions and the lack of corroborating medical evidence in the record. The ALJ did not err by the mere fact that he did not include a lengthier discussion of Plaintiff's knee impairment. See Howard, 341 F.3d at 1012; cf. Damiano v. Colvin, No. CV-12-0759, 2013 WL 5722813, at *5 (D. Ariz. Oct. 22, 2013) ("While the claimant might have liked the ALJ to engage in a lengthier discussion regarding his rejection of Dr. Churchill's opinion . . . the ALJ provided a specific, legitimate reason for his conclusion regarding Dr. Churchill's opinion.").

## III.

## CONCLUSION

The decision of the Social Security Commissioner is affirmed and this case is dismissed with prejudice.

Date:  December 20, 2019

DOUGLAS F. McCORMICK
United States Magistrate Judge